[No. A087591. First Dist., Div. Two. Nov. 30, 2000.]

ADOLPHUS RAY MORGAN, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Defendant
and Respondent.

**COUNSEL**

Dorothy Davis Guillory for Plaintiff and Appellant.

Fisher & Phillips and John Leslie Beers for Defendant and Respondent.

**OPINION**

**KLINE, P. J.**—Adolphus Ray Morgan appeals from a summary judgment granted in favor of the Regents of the University of California (University) in his employment discrimination action.[1] He contends the trial court erred in granting summary judgment because he presented direct evidence that respondent's failure to rehire him after a layoff was in retaliation for his prior complaint about race discrimination; respondent failed to demonstrate legitimate reasons for not rehiring him; and he raised triable issues of material fact as to whether the reasons offered to justify the employment decision were pretextual. We affirm.

### STATEMENT OF THE CASE AND FACTS

Appellant worked as an electronic technician in the University's mechanical engineering department from 1982 until June 30, 1995. His primary job

---

[1]Appellant states in his opening brief that he has abandoned the appeal of the summary judgment in favor of the individual defendants "in light of recent decisional laws." These parties are not involved in the present appeal.

duties included installation and maintenance of electrical equipment, electronic equipment and computers. He and one other employee were the only two African-American electronic technicians in the University's college of engineering.

In August 1994, appellant filed an internal grievance claiming racial discrimination in that he had been docked for leaving work early one day while two other employees who left early that day were not docked. The administrative review of the grievance, conducted by Brenda Greenwood, concluded that the three employees should have been treated equally and that appellant should be restored his one and a half hours of leave without pay, but noted that appellant had an "ongoing attendance problem with heavy leave usage" and that appellant's failure to follow rules and procedures had led his supervisor "to impose different expectations" on him. Greenwood found no evidence of discrimination but noted problems with appellant's attendance and performance on the job as well as problems of communication and trust between appellant and his supervisor. Greenwood's report noted that during an informal meeting facilitated by the chairman of the department, appellant "apologized to Supervisor Shaw and indicated that the grievance was not based on racial discrimination." The University followed Greenwood's recommendation to restore appellant his leave time.

On May 1, 1995, Morgan was notified that he was to be laid off effective July 1, 1995, due to a permanent budget reduction for the department of mechanical engineering. The letter informing him of the layoff also informed him of his right to preferential rehiring in certain circumstances: Under the University's staff personnel policies, appellant had a right to recall to positions in the same class in the department of mechanical engineering and to preference for employment elsewhere on campus at the same or a lower salary level, provided he was qualified for the jobs in question. According to the declaration of Karen Burke-Johnson, a principal personnel analyst with the University, "[a]lthough two jobs may have the title "Electronic Technician," the qualifications/functions for each position may vary widely, depending on the needs of each Department." Burke-Johnson stated that the preferential rehire program was implemented by sending the application of layoff job candidates to the hiring department ahead of other applications; the department would determine whether the candidate was qualified by reviewing the application and/or interviewing the candidate, then was required to offer the job if the candidate was qualified and could reject the application if the candidate was not qualified. The language of the University's "Preferential Referral Form" states that an interview is required for preferential rehire candidates.

On May 10, 1995, appellant filed a formal grievance challenging his layoff. Appellant stated that he believed the layoff was "partially in response

to my filing a grievance last year" and that he was being discriminated against because of his race. The layoff took effect on July 1, 1995.

Appellant filed a complaint with the Department of Fair Employment and Housing (DFEH) and Equal Employment Opportunity Commission (EEOC) on August 30, 1995, and an amended complaint on October 26, 1995, alleging racial discrimination. The complaint identified the most recent discrimination as having occurred on May 1, 1995.

An arbitration hearing on appellant's grievance was held on November 9, 1995.[2] The arbitrator concluded that the budget crisis was legitimate, the decision to lay off the least skilled electronics technician in the department could not be second-guessed, and "[d]espite the inferences, there is no persuasive evidence supporting a finding of racial discrimination or reprisal in the decision to lay [appellant] off."[3] The arbitrator did find that the department had failed to follow a requirement that the department head discuss layoffs with the personnel manager and the affirmative action officer, and for this violation awarded appellant one week's salary as damages.

After his layoff, appellant applied for some 25 jobs at the university in 1995 and seven jobs in 1996.[4] He was hired for none of them. Appellant stated in a declaration that Burke-Johnson, his work counselor, helped him

---

[2]Cynthia Fletcher, the other African-American electronic technician in the college of engineering, testified at the arbitration hearing that she felt she had been passed over for promotion and/or reclassification because of her race and gender. She had filed a complaint with the EEOC which was not approved because the complaint was associated with a particular individual who had quit by the time the complaint was considered, leading the EEOC to conclude the department had made some effort to deal with the situation. Fletcher worked in a different shop from appellant's, under a different department head.

The chairman of the mechanical engineering department, David Bogy, testified that he would not consider bringing appellant back to work if the department had funds due to another employee's retirement. His testimony indicated that the availability of funds from such a situation would allow him to avoid an anticipated layoff.

[3]The arbitrator's opinion stated that the union had presented "a number of factors which raise certain inferences," including that appellant was the only African-American in the unit, there were few African-American technicians employed by the University and appellant's supervisor "appear[ed] to have little sensitivity in this area." The opinion further stated, however, that "conclusions must be based on findings of fact" and the inferences were "insufficient support upon which to make a finding that [appellant's] lay-off should be rescinded."

[4]Appellant states in his appellate brief that he applied for 26 positions in 1995. The documentation to which he cites is inconsistent as to the exact number of positions for which he applied. For example, the declaration of Doug Brown, chief steward for the union to which appellant belonged, states that appellant applied for 23 positions between May and September 1995 but lists 26 positions; appellant's own declaration, states that he applied for five positions in 1995 in addition to the "twenty (23)" positions set forth in Brown's declaration, then subsequently states that he applied for 25 positions in 1995.

choose positions for which he was qualified and advised him to apply for only positions that matched his education, background and experience. Appellant testified in a deposition in January 1999 that Burke-Johnson told him when he began to consult with her that he would never get rehired because he had filed a grievance against the University. He testified that Burke-Johnson also told him that prospective employers in the University would have his personnel file and his "filing a grievance and the retaliation stuff may come up." Appellant stated that another personnel representative, Ms. Kuroiwa, told him it was a waste of time to file a grievance and to file job applications.

Appellant was interviewed for three of the positions for which he applied in 1995. According to appellant, the selecting official for one of the jobs had reviewed appellant's personnel file and taken note of the fact he was in arbitration concerning his union grievance. The correspondence to which appellant cites, after listing four reasons appellant's application was rejected due to his lack of expertise, states: "Other concerns: Mr. Morgan arrived 20 min. late to the interview. I had given him specific instructions as to our location on the campus but he said that he was on the other side of the campus. After reviewing his personnel file, it was noted that Mr. Morgan has developed a pattern of attendance problems and is currently in arbitration pending a grievance. Given the half-time nature of the position we anticipated that time could become problematic."

In March 1996, a vocational rehabilitation counselor who had been asked to evaluate appellant's ability to obtain a "comparable position"[5] in connection with appellant's claim for disability income indicated that a University compensation analyst had reported that "all electronics technicians with the position code of 8303 are expected to perform the same basic job duties" and concluded that there were positions at the University for which appellant was qualified and which he was medically able to perform."

In May 1996, appellant applied for a position as senior electronic technician in the "Information, Resources and Communications Department" of the office of the president. According to the declaration of employment officer Christine Nishida, this position was eliminated as part of a reorganization following the departure of the individual responsible for supervising the position, and none of the applicants for the position were interviewed or hired.

---

[5]"Comparable position" was defined as "another University position for which the Member is qualified and is medically able to perform, whether or not such a position is available, and which provides a salary rate of at least 80% of the Member's Final Salary." Appellant apparently sought disability due to depression and inability to return to his former work location.

Also in May 1996, appellant applied for a position as electronic technician in the college of chemistry. Jolene Adams, a computing resource manager in the college of chemistry, was the person responsible for deciding not to hire appellant for this position. She stated in her declaration that she contacted appellant to schedule an interview for this position, but appellant was out of town during the interview process. Adams declared that she could not postpone the interview until appellant's return because the University had an urgent need to fill the position. She further stated that the individual who was offered the position was more qualified than appellant because he had "a broader experience base in repair and in troubleshooting in a network environment." At the time Adams decided not to hire appellant, she had no knowledge of his prior complaints of retaliation and/or discrimination.

In July 1996, appellant applied and was interviewed for a position as an electronic technician trainee in the electrical engineering and computer sciences department. Ferenc Kovac, an engineering manager in the department, made the decision not to hire appellant. According to Kovac's declaration, appellant was not qualified for the position because he was "considered weak in his understanding of basic electronic circuits and computer components," he "lacked knowledge of the concept of the MAC operating system, and the type of CPU systems in PCs," and he "couldn't describe the functionality of computer boards he had used, data acquisition or types of video cards." The person hired for the position was more qualified than appellant because he "demonstrated a thorough understanding of basic electronics and analog and digital circuits, and he showed enthusiasm and had strong interpersonal, customer service, and communication skills." At the time he made the decision not to hire appellant, Kovac had no knowledge of appellant's prior complaints of retaliation and/or discrimination.

In August 1996, appellant applied and was interviewed for a position as a development technician III with the materials science and minerals engineering department. James Evans, the professor with decisionmaking responsibility for filling this position, stated in his declaration that he was seeking an individual with "extensive machine shop experience and science laboratory experience"; that appellant was not qualified for the position because his machine skills "were considered not up to the necessary level" and that the person who was offered the position was "an accomplished machinist" who "also had experience working with chemicals."[6] When Evans decided not to hire appellant, he had no knowledge that appellant had filed a grievance with the University or had complained of retaliation or discrimination.

---

[6]Appellant stated in his deposition that he told the interviewers for this position that he "didn't do any jobs machinists type work, that wasn't [his] expertise" and that he had "[s]ome familiarity with some equipment but nothing to be a machinist."

In September 1996, appellant applied for the position of computer resource specialist II in the library systems unit. Paul Payne, the computer resource manager who made the decision not to hire appellant, stated in his declaration that appellant was found to lack the experience or qualifications for the position in that "he did not have the requisite experience with software applications such as Web browsers, X-Windows, TCP/IP client software or Netware client software" and "did not have help desk experience, nor did it appear that he had sufficient knowledge of and experience in hardware and software installation, diagnosis [and/or] trouble-shooting." The person hired for the position was promoted from a computer resource specialist I position within the library systems unit and was more qualified than appellant because he demonstrated "customer service skills, help desk experience and skills, knowledge of Campus and Library computing resources, and knowledge of and experience in hardware and software installation, diagnosis and trouble-shooting." Payne had no knowledge of appellant's prior complaints of retaliation and/or discrimination at the time he decided not to hire appellant.

Also in September 1996, appellant applied for two positions as an electronic technician in the department of communication and network services. Michael Sawyer, a manager in the department, decided not to interview appellant after consultation with the director of communication and network services. According to Sawyer's declaration, appellant's resume "did not demonstrate the skills and experience required for the Electronic Technician position" in that "it did not appear that [appellant] had the necessary and relevant experience in the following areas: protocols, media types, networking equipment, and network test equipment. It appeared that [appellant's] experience was concentrated in instrument repair and maintenance; we were seeking an individual with a more concentrated background in the areas listed above." The person who was offered the first position was more qualified than appellant because he had eight years of experience with the department and a "working knowledge of and demonstrated experience in not only all aspects of networking listed above but also internal policies and practices." The person who was hired for the second position was more qualified than appellant because "she had two years' experience directly related to networking and networking systems and eight years' experience in data communications." At the time he decided not to hire appellant for these two positions, Sawyer had no knowledge of appellant's previous complaints of retaliation and/or discrimination.

All the decision makers that failed to hire appellant stated their rejections of his applications were not based on appellant's race.

According to appellant's deposition testimony, Sawyer worked closely with appellant's prior supervisor, Shaw, and appellant had seen the two supervisors together at social gatherings at work. Appellant testified that Sawyer refused to interview him, was rude to him on the telephone and told him he would never be qualified for any job in Sawyer's department. In a letter, and in correspondence with Burke-Johnson, Sawyer stated, "In reviewing Mr. Morgan's job application, I found no evidence of the technical knowledge and experience required for this position or any of the upcoming ET openings in DCNS."

On April 29, 1997, appellant filed a complaint with the DFEH, alleging he had been denied employment and rehire rights in retaliation for having complained about discrimination.[7] He alleged the discrimination occurred from May 1996 to December 1996.

On July 25, 1997, appellant filed a complaint against the University, alleging racial discrimination under the FEHA (California Fair Employment and Housing Act) (Gov. Code, § 12940, subd. (a)), retaliation in violation of Government Code section 12940 and retaliation in violation of Labor Code section 1102.5.

The University's demurrer to the second cause of action was overruled and its demurrer to the third cause of action was sustained with leave to amend.

The University subsequently filed a motion for judgment on the pleadings and to confirm arbitration award, which was heard in March 1998. On March 31, the motion for judgment on the pleadings was granted as to appellant's claims of discrimination and retaliation during employment and in layoff, leaving appellant's claims of discrimination and retaliation in denial of rehire rights as the only issues to be litigated. The motion to confirm the arbitration award was granted.

The University filed a motion for summary judgment on February 2, 1999, which was granted by order filed March 25, 1999. The court concluded that appellant failed to raise triable issues of fact that the legitimate reasons for denial of rehire were pretextual or that David Bogy or Alvin Shaw participated in the decision not to rehire appellant.

---

[7]Appellant initially prepared the DFEH complaint in January 1997 but had to make revisions before it was accepted for filing.

Judgment was entered on April 23, 1999. Notice of entry of judgment was served on May 3, 1999.[8]

A notice of appeal was filed on July 1, 1999.

## DISCUSSION

## I.

Preliminarily, respondent maintains that the only rehire decisions subject to challenge on this appeal are the seven made in 1996, as these were the only decisions that were timely challenged. Appellant's sole complaint to the DFEH regarding the University's failure to rehire him was filed on April 29, 1997, and alleged discriminatory denial of rehire rights from May 1996 to December 1996.

 "Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the Department of Fair Employment and Housing (Department) and must obtain from the Department a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA. (Gov. Code, §§ 12960, 12965, subd. (b); *Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 88 [276 Cal.Rptr. 130, 801 P.2d 373]; *Martin* v. *Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1724 [35 Cal.Rptr.2d 181].) The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under the FEHA. (*Accardi* v. *Superior Court* (1993) 17 Cal.App.4th 341, 349 [21 Cal.Rptr.2d 292]; *Denny* v. *Universal City Studios, Inc.* (1992) 10 Cal.App.4th 1226, 1232 [13 Cal.Rptr.2d 170].) [¶] As for the applicable limitation period, the FEHA provides that no complaint for any violation of its provisions may be filed with the Department 'after the expiration of one year from the date upon which the alleged *unlawful practice* or refusal to cooperate *occurred*,' with an exception for delayed discovery not relevant here. (Gov. Code, § 12960, italics added.)" (*Romano* v. *Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492 [59 Cal.Rptr.2d 20, 926 P.2d 1114], first italics omitted.)

Under these principles, rehire decisions made before April 29, 1996, may not be reviewed on this appeal. Appellant, however, asserts (without supporting argument) that the 1995 decisions may be considered under the "continuing violations theory (*Accardi* v. *Superior Court*[, *supra*], 17 Cal.App.4th 341, 348-351)." This theory is an "equitable exception to the

---

[8]The notice of entry of judgment is not file-stamped but is dated May 3, 1999. Respondent makes no suggestion the appeal is not timely.

timely filing requirement." (*West v. Philadelphia Elec. Co.* (3d Cir. 1995) 45 F.3d 744, 754.)

■ A continuing violation may be established by demonstrating "a company wide policy or practice" or "a series of related acts against a single individual." (*Green v. Los Angeles Cty. Superintendent of Sch.* (9th Cir. 1989) 883 F.2d 1472, 1480.) "The continuing violation theory generally has been applied in the context of a continuing policy and practice of discrimination on a company-wide basis; a plaintiff who shows that a policy and practice operated at least in part within the limitation period satisfies the filing requirements. '[A] systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period. The reason is that the continuing system of discrimination operates against the employee and violates his or her rights up to a point in time that falls within the applicable limitations period. Such continuing violations are most likely to occur in the matter of placements or promotions.' " (*Green v. Los Angeles Cty. Superintendent of Sch., supra,* 883 F.2d 1472, 1480; *Williams v. Owens-Illinois, Inc.* (9th Cir. 1982) 665 F.2d 918, 924; *West v. Philadelphia Elec. Co., supra,* 45 F.3d 744, 755.) The plaintiff must demonstrate that at least one act occurred within the filing period and that "the harassment is 'more than the occurrence of isolated or sporadic acts of intentional discrimination.' [Citation.] The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern." (*West v. Philadelphia Elec. Co., supra,* 45 F.3d at p. 755.)

In *Williams v. Owens-Illinois, Inc., supra,* 665 F.2d 918, 924, a class action, the court explained that a " 'challenge to systematic discrimination is always timely if brought by a present employee, for the existence of the system deters the employee from seeking his full employment rights or threatens to adversely affect him in the future.' " By contrast, "[a] refusal to hire or a decision to fire an employee may place the victim out of reach of any further effect of company policy, so that such a complainant must file a charge within the requisite time period after the refusal to hire or termination, or be time-barred. If in those cases the victims can show no way in which the company policy had an impact on them within the limitations period, the continuing violation doctrine is of no assistance or applicability, because mere 'continuing impact from past violations is not actionable.' " (*Ibid.,* italics omitted.) *Williams* found the continuing violations theory applicable to plaintiffs' challenges to decisions regarding promotions and placement, but not to decisions regarding hiring and firing. In *City & County of San Francisco v. Fair Employment & Housing Com.* (1987) 191 Cal.App.3d 976, 980 [236 Cal.Rptr. 716], a challenge to the city's promotional system was held timely as long as promotions had been made on the basis of the

challenged system within the year preceding the filing of a complaint. (See *Valdez v. City of Los Angeles* (1991) 231 Cal.App.3d 1043, 1052-1053 [282 Cal.Rptr. 726].)

In attempting to show a continuing violation through "a series of related acts against a single individual . . . . '[The] question . . . boils down to whether sufficient evidence supports a determination that the "alleged discriminatory acts are related closely enough to constitute a continuing violation." ' " (*Green v. Los Angeles Cty. Superintendent of Sch., supra,* 883 F.2d at pp. 1480-1481.) Many of the cases of this type of continuing violation explain that the "continuing violation doctrine 'is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated.' " (*Bullington v. United Air Lines, Inc.* (10th Cir. 1999) 186 F.3d 1301, 1311.) "Thus, a continuing violation claim will likely fail if the plaintiff knew, or through the exercise of reasonable diligence would have known, [he] was being discriminated against at the time the earlier events occurred." (*Ibid.*)

Cases alleging a hostile work environment due to racial or sexual harassment are often found to come within the continuing violations framework. (E.g., *Accardi v. Superior Court, supra,* 17 Cal.App.4th at pp. 349-351 [10-year course of sexual harassment of female police officer]; *Watson v. Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1291 [261 Cal.Rptr. 204] ["campaign of retaliatory harassment" against employee who complained about employer's failure to promote her]; *Anthony v. County of Sacramento* (E.D.Cal. 1995) 898 F.Supp. 1435, 1443 ["hostile environment harassment . . . by its nature involves an ongoing course of conduct rather than a single discrete act"].)

Appellant's complaint in the present case is that the University repeatedly failed to rehire him in retaliation for his having complained about racial discrimination. He does not allege a University-wide systematic policy of discrimination, rendering the first category of continuing violation cases inapplicable. As for the second category, while appellant complains that the University made a series of decisions not to rehire him, in reality he challenges a series of decisions made by different decision makers in unrelated departments of the University regarding positions with varying job requirements.

Several courts have found that a series of rejected job applications does not demonstrate a continuing violation. In *Bullington v. United Air Lines, Inc., supra,* 186 F.3d at pages 1310-1311, the plaintiff's application for a position as a flight officer had been rejected three times in two years. The

court refused to accept the continuing violation theory to allow the plaintiff to rely upon the earliest of the rejections, viewing that rejection as an isolated event which should have given the plaintiff reason to believe she had been discriminated against. In *Morris v. Frank IX & Sons, Inc.* (W.D.Va. 1980) 486 F.Supp. 728, 732-733, the court stated, "an employer's failure to recall or rehire an individual after a layoff does not constitute a continuing violation of the [Age Discrimination in Employment Act]." Rather, "each alleged discriminatory recall constitutes a separate and completed act by the defendant, which triggers a new [limitations period]." (*Ibid.*)

More similar to the situation in the case before us, in *Narin v. Lower Merion School Dist.* (E.D.Pa. 1998) 24 F.Supp.2d 465, 473, a teacher who was not hired for any of the approximately 10 positions for which she applied over the course of a year and a half alleged age discrimination against the school district. *Narin* rejected the plaintiff's attempt to rely on the continuing violations theory to bring some of the employment decisions before the court, finding that "each of the acts of discrimination as alleged in Plaintiff's complaint more closely resemble isolated employment decisions." Additionally, *Narin* stated that when the plaintiff learned she had not been hired for a particular position, " 'the act [had] the degree of permanence which should trigger an employee's awareness of and duty to assert [his] or her rights.' " (*Ibid.*, quoting *Berry v. Board of Sup'rs of L.S.U.* (5th Cir. 1983) 715 F.2d 971, 981.)[9]

As in *Narin*, despite the fact that the adverse employment actions all involved the University's failure to rehire appellant, the situation in the present case involves a series of "isolated employment decisions" (*Narin v. Lower Merion School Dist., supra*, 24 F.Supp.2d at p. 473) rather than acts

---

[9]*Berry* identified three nonexclusive factors relevant to the determination whether a series of events constitutes a continuing violation: "The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?" (*Berry v. Board of Sup'rs of L.S.U., supra*, 715 F.2d at p. 981.) The Ninth Circuit recently found *Berry*'s factors inappropriate for determining whether a series of acts constituted a hostile work environment, preferring its previously stated view that " '[the] question . . . boils down to whether sufficient evidence supports a determination that the "alleged discriminatory acts are related closely enough to constitute a continuing violation." ' " (*Fielder v. UAL Corp.* (9th Cir. 2000) 218 F.3d 973, 987-988, quoting *Green v. Los Angeles Cty. Superintendent of Sch., supra*, 883 F.2d at pp. 1480-1481.) To our knowledge, the Ninth Circuit has not addressed the relevance of the *Berry* factors in other discrimination cases.

" ' "related closely enough to constitute a continuing violation." ' " (*Green v. Los Angeles Cty. Superintendent of Sch., supra,* 883 F.2d at pp. 1480-1481.) As previously stated, the decisions not to rehire appellant were made by many different decision makers, with no evidence the decisions were connected to each other in any way. Additionally, each time appellant was informed he was not being hired for a position to which he had applied, he was, or should have been, aware this action might be contrary to his preferential rehire rights. Certainly appellant should have been aware of his potential claim far earlier than it was asserted. Accordingly, only appellant's rejections from the positions for which he applied in 1996 are subject to review on this appeal.

## II.

"Summary judgment is properly granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ■ A defendant seeking summary judgment bears the initial burden of proving the 'cause of action has no merit' by showing that one or more elements of plaintiff's cause of action cannot be established or there is a complete defense. (Code Civ. Proc., § 437c, subds. (a), (o)(2); *Addy* v. *Bliss & Glennon* (1996) 44 Cal.App.4th 205, 213 [51 Cal.Rptr.2d 642]; *Martin* v. *Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1730-1731 [35 Cal.Rptr.2d 181].) Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. (*Ibid.*)

■ " 'This court reviews de novo the trial court's decision to grant summary judgment and we are not bound by the trial court's stated reasons or rationales. (*Prilliman* v. *United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 951 [62 Cal.Rptr.2d 142].)' (*Hersant* v. *Department of Social Services* (1997) 57 Cal.App.4th 997, 1001 [67 Cal.Rptr.2d 483].) We accept as true the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them. (*Ibid.*)" (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 · Cal.App.4th 798, 805 [85 Cal.Rptr.2d 459] (*Horn*).

■ Appellant's suit alleges discrimination and retaliation in the denial of rehire rights. Such a case may be built on direct or circumstantial evidence, or both. (*Godwin v. Hunt Wesson, Inc.* (9th Cir. 1998) 150 F.3d 1217, 1220; *Cordova v. State Farm Ins. Companies* (9th Cir. 1997) 124 F.3d 1145, 1149.) " 'Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.' " (*Godwin, supra,* 150 F.3d at p. 1221.) Where a plaintiff offers direct evidence of discrimination that is believed by the trier of fact, the defendant can avoid liability only

by proving the plaintiff would have been subjected to the same employment decision without reference to the unlawful factor. (*Miles v. M.N.C. Corp.* (11th Cir. 1985) 750 F.2d 867, 869; *Price Waterhouse v. Hopkins* (1989) 490 U.S. 228, 244-245 [109 S.Ct. 1775, 1787-1788, 104 L.Ed.2d 268] [when plaintiff shows decision motivated by an improper factor, a defendant can avoid liability only by showing the same decision would have been made without reference to improper factor]; see *Trans World Airlines, Inc. v. Thurston* (1985) 469 U.S. 111, 121 [105 S.Ct. 613, 621-622, 83 L.Ed.2d 523] [direct evidence of discrimination renders shifting burdens of *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] inapplicable].) Since plaintiffs in employment discrimination cases most often lack direct evidence of the employer's discriminatory intent, however, courts rely on a system of shifting burdens to aid the presentation and resolution of such claims. (*Hersant v. Department of Social Services, supra,* 57 Cal.App.4th 997, 1002; *Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 662 [8 Cal.Rptr.2d 151].)

Under the three-part test developed in *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. 792: "(1) The complainant must establish a prima facie case of discrimination; (2) the employer must offer a legitimate reason for his actions; (3) the complainant must prove that this reason was a pretext to mask an illegal motive." (*Clark v. Claremont University Center, supra,* 6 Cal.App.4th at p. 662.)

█ If the employee establishes a prima facie case, the employer is required to offer a legitimate, nondiscriminatory reason for the adverse employment action. (*Horn, supra,* 72 Cal.App.4th 798, 806.) The employer's burden at this stage is to go forward with additional evidence; it does not take on a burden of persuasion. (*Reeves v. Sanderson Plumbing Products, Inc.* (2000) 530 U.S. 133, 142 [120 S.Ct. 2097, 2106, 147 L.Ed.2d 105]; *Clark v. Claremont University Center, supra,* 6 Cal.App.4th at p. 663.) If the employer produces substantial evidence of a legitimate, nondiscriminatory reason for the adverse employment action, the presumption of discrimination created by the prima facie case " 'simply drops out of the picture' " (*Horn, supra,* 72 Cal.App.4th at p. 807, quoting *St. Mary's Honor Center v. Hicks* (1993) 509 U.S. 502, 511 [113 S.Ct. 2742, 2749, 125 L.Ed.2d 407]) and the burden shifts back to the employee to prove intentional discrimination. (*Horn, supra,* 72 Cal.App.4th at p. 806; *Hersant v. Department of Social Services, supra,* 57 Cal.App.4th at p. 1003; *Clark, supra,* 6 Cal.App.4th at p. 664.) "[T]he plaintiff may establish pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' " (*Godwin v. Hunt Wesson, Inc., supra,* 150 F.3d at p. 1220,

quoting *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 256 [101 S.Ct. 1089, 1095, 67 L.Ed.2d 207].) Circumstantial evidence of " 'pretense' must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate" on an improper basis. (*Godwin, supra,* 150 F.3d 1217, 1222; *Horn, supra,* 72 Cal.App.4th at p. 807.)[10] With direct evidence of pretext, " 'a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial.' [Citation.] The plaintiff is required to produce 'very little' direct evidence of the employer's discriminatory intent to move past summary judgment." (*Chuang v. University of California Davis* (9th Cir. 2000) 225 F.3d 1115, 1128.)

### A.

■ Appellant first contends the trial court erred in granting summary judgment because he presented direct evidence of retaliatory motive and the University failed to prove by a preponderance of the evidence that it would not have rehired appellant even without the retaliation.

■ " 'To establish a prima facie case of retaliation, a plaintiff must show that she engaged in protected activity, that she was thereafter subjected to adverse employment action by her employer, and there was a causal link between the two.' " (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1125 [75 Cal.Rptr.2d 27], quoting *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 614 [262 Cal.Rptr. 842]; *Addy v. Bliss & Glennon, supra,* 44 Cal.App.4th 205, 217; *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 476 [4 Cal.Rptr.2d 522].) "The retaliatory motive is 'proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter.' (*Jones v. Lyng* (D.D.C. 1986) 669 F.Supp. 1108, 1121.) 'The causal link may be established by an inference derived from circumstantial evidence, "such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision." ' (*Jordan v. Clark* (9th Cir. 1988) 847 F.2d 1368, 1376.)" (*Fisher v. San Pedro Peninsula Hospital, supra,* 214 Cal.App.3d at

---

[10]The United States Supreme Court recently held that the plaintiff in a discrimination case need not necessarily produce additional evidence of discrimination in the third stage of the *McDonnell Douglas* inquiry: A verdict for the plaintiff may be upheld based upon evidence establishing a prima facie case combined with "sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision." (*Reeves v. Sanderson Plumbing Products, Inc., supra,* 530 U.S. at p. 140 [120 S.Ct. at p. 2104].) This holding, dealing with a jury verdict, does not directly affect the quantum of evidence necessary to avoid summary judgment, although it obviously suggests the bar may not be set too high.

pp. 614-615.) "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." (*Cohen v. Fred Meyer, Inc.* (9th Cir. 1982) 686 F.2d 793, 796; *Gunther v. Washington County* (9th Cir. 1979) 623 F.2d 1303, 1316.)

 The evidence that appellant claims demonstrates respondent's retaliatory motive consists of Greenwood's alleged statement that it was poor judgment for appellant to use the grievance procedure and his doing so was "probably a detriment"; Burke-Johnson's statements that appellant would never be rehired because he had filed the grievance and that the individuals involved in hiring decisions would have appellant's personnel file and "me filing a grievance and the retaliation stuff may come up"; and Kuroiwa's statement that it was a waste of appellant's time to file applications for rehire.

Appellant views the statements of Greenwood, Burke-Johnson and Kuroiwa as nonhearsay admissions of a party. (Evid. Code, §§ 1220, 1222.) They could qualify as such only if the declarants were authorized by respondent to speak on the subject they addressed. (*O'Mary v. Mitsubishi Electronics America, Inc.* (1997) 59 Cal.App.4th 563, 570 [69 Cal.Rptr.2d 389].) There is no evidence that this is the case, as none of the individuals under discussion were involved in the decisions not to rehire appellant. *E.E.O.C. v. Watergate at Landmark Condominium* (4th Cir. 1994) 24 F.3d 635, 640-641, upon which appellant relies, stands for the proposition that agency sufficient to bind an employer may exist where the declarant is not the actual decision maker but has significant involvement in the process leading to a challenged decision. In *Watergate*, however, the statements at issue were made by individuals integrally involved in a series of decisions that culminated in the termination of the plaintiff's employment. Here, while Greenwood, Burke-Johnson and Kuroiwa were all employed by respondent, none of these individuals were involved in any way with the various departments' decisions not to hire appellant for the jobs for which he applied.

Appellant's suggestion that the statements are admissible as nonhearsay "general examples of unlawful company policy" is not convincing. *Vazquez v. Lopez-Rosario* (1st Cir. 1988) 134 F.3d 28, 35, cited by appellant, noted this theory of admissibility but found it inapplicable because the plaintiff in that case challenged a single employment decision and did not allege a company-wide policy. In cases applying this theory, employees were informed by supervisors of company policies relevant to their circumstances, such as that the company "frowned on" older workers (*Abrams v. Lightolier Inc.* (3d Cir. 1995) 50 F.3d 1204, 1215-1216) or that the "higher-ups"

intended to eliminate older workers (*Hybert v. Hearst Corp.* (7th Cir. 1990) 900 F.2d 1050, 1053). Here, the statements of Greenwood, Burke-Johnson and Kuroiwa did not purport to attribute to the University a policy of refusing to hire employees who had previously filed grievances but rather amounted to speculation as to the likely outcome of appellant's job search by individuals who played no role in the decisions regarding that search.

Appellant further asserts that the testimony of David Bogy, chair of the department of mechanical engineering, during the arbitration of appellant's grievance, demonstrates discrimination in the decisions not to rehire him. Appellant characterizes Bogy as having testified that "he wouldn't consider bringing [appellant] back even if there were funds for his position."

The relevant testimony at the arbitration hearing was as follows:

"Q: Do you have a lab mechanician [*sic*] retiring next month in the department?

"A: A lab mechanician [*sic*] retiring next month? Let me think about that. I don't believe so. If I do, I may not have to lay off this next person I have in mind.

"Q: If you did have funds in the department from another person who was VERIPed or who was being retired, would you consider bringing Ray back?

"A: No."

According to the arbitrator's decision, at the time of his layoff appellant was the only person in his department with an electronics technician classification in his department and the more skilled senior and principal electronics technicians would be able to "pick up the slack" from his layoff. Given these findings, Bogy was actually being asked whether he would rehire appellant if funds became available from the retirement of an individual with a higher job classification, not whether he would rehire appellant if funds became available for a position equivalent to the one appellant had previously held. Moreover, Bogy was not asked to and did not explain the reason for his testimony, making appellant's assertion that it reflects discriminatory intent purely speculative. In any case, appellant has offered no evidence to refute Bogy's declaration that he was not involved in any decision regarding appellant's 1996 job applications and did not communicate any information about appellant to anyone who was involved in such decisions.

Appellant also argues that the fact he and Fletcher, the only other African-American in the college of engineering, were laid off after complaining

about discrimination is an example of a previous act demonstrating respondent's retaliatory attitude. One problem with this argument is that there is no evidence Fletcher was laid off. To the contrary, in her testimony at the arbitration of appellant's grievance, Fletcher stated that she was a current employee in the college of engineering and that the grievance she filed concerned denial of promotion. Another problem is that the arbitrator expressly found that appellant's layoff was not a result of discrimination or retaliation. Appellant asserts that the arbitrator's finding of no discrimination does not preclude his arguing the point here. The case upon which he relies, however, did not involve any issue of the preclusive effect of an arbitrator's decision. (*Torrez v. Consolidated Freightways Corp.* (1997) 58 Cal.App.4th 1247, 1251-1252 [68 Cal.Rptr.2d 792].) Rather, *Torrez* dealt with an employer's right to compel arbitration, holding that a clause in a collective bargaining agreement requiring arbitration of employment related claims does not require an individual employee to arbitrate statutory discrimination claims. Contrary to appellant's assertion, "[t]he doctrine of collateral estoppel bars the relitigating of issues which were previously resolved in an administrative hearing by an agency acting in a judicial capacity." (*Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 242 [244 Cal.Rptr. 764]; see *Guthrey v. State of California, supra,* 63 Cal.App.4th 1108.) Here, appellant's claim of discrimination and retaliation in his layoff was rejected by the arbitrator after a full hearing, the arbitrator's award was subsequently confirmed by the trial court and the record gives no indication this decision was appealed.

Additionally, appellant offers as direct evidence of retaliatory motive his deposition testimony that Sawyer, the decision maker for two of the positions for which appellant applied in the department of communications and network services, refused to interview appellant, was rude to him on the telephone and told appellant he would never be qualified for any of the upcoming electronics technician jobs in the department. Appellant testified that Sawyer knew of appellant's past unsuccessful job applications because Sawyer was a supervisor who did the same type of work as appellant's former supervisor, Shaw, and appellant had seen Sawyer and Shaw talking together numerous times about work. Assuming the truth of appellant's testimony, it does not demonstrate any discriminatory or retaliatory intent. According to Sawyer's declaration, he declined to interview appellant because he found appellant's qualifications for the positions lacking. Sawyer's communication of his decision to the personnel department referenced a letter from the interim director of the department of communications and network services finding appellant not qualified for a position in the department. That letter explained that "the payroll title 'Electronics Technician' is not a very good match for the Network Technician positions in DCNS, so it

is not surprising that Mr. Morgan does not qualify for our job, despite his previous experience as an ET in another department." This evidence of a disparity between the job title "Electronics Technician" and the needs of the particular department explain why appellant was told he would not qualify for future jobs in the department. Appellant has offered no evidence casting doubt on the legitimacy of this evidence or demonstrating he was in fact qualified for the jobs. Nor has appellant demonstrated that Sawyer's alleged rudeness on the telephone related to appellant's race or past filing of a grievance, or that Sawyer and Shaw ever discussed appellant. Appellant's assumption that these facts reflects discriminatory or retaliatory motive is purely speculative. (See *Guthrey v. State of California, supra,* 63 Cal.App.4th at p. 1118; *Hersant v. Department of Social Services, supra,* 57 Cal.App.4th 997, 1009.)

In any event, and perhaps most importantly, all of the actual decision makers responsible for failing to rehire appellant in 1996 affirmatively stated in their declarations that they were not aware of appellant's grievance or past complaints of retaliation or discrimination at the time they decided not to hire him. In response to these declarations, appellant offered his deposition testimony that he thought it would be the practice for interviewers to get his personnel file because Burke-Johnson had told him "people wanted to see [his] personnel file." This testimony reflects only appellant's belief about the interviewers' practices; it does not demonstrate that the practice of reviewing applicants' personnel files existed or that the specific individuals who interviewed appellant in fact reviewed his file. Appellant also offered an e-mail message to Burke-Johnson from one of the decision makers who declined to hire him in 1995, which contained a reference to appellant's personnel file. This correspondence, however, concerned an application outside the scope of this appeal and sheds no light on the information in the hands of the decision makers at issue here.[11] Appellant presented no evidence to directly refute the declarations disclaiming knowledge of his prior grievance. In the absence of evidence that the individuals who denied appellant employment were aware of his past filing of a grievance, the causal link necessary for a claim of retaliation can not be established.

Appellant argues that he need not demonstrate that every individual who failed to hire him knew of his grievance and acted in retaliation because a jury could infer that "an evaluation at any level, if based on discrimination,

---

[11]The relevant portion of the message stated: "Other concerns: Mr. Morgan arrived 20 min. late to the interview. I had given him specific instructions as to our location on the campus but he said that he was on the other side of the campus. After reviewing his personnel file, it was noted that Mr. Morgan has developed a pattern of attendance problems and is currently in arbitration pending a grievance. Given the half-time nature of the position we anticipated that time could become problematic."

influenced the decisionmaking process and thus allowed discrimination to infect other decisions concerning the very same candidate and made at the very same time." He relies upon *Clark v. Claremont University Center, supra,* 6 Cal.App.4th 639, in which the court stated: " '[A]n individual employment decision should not be treated as a [¶] ["]watertight compartment, with discriminatory statements in the course of one decision somehow sealed off from (that is, irrelevant to) every other decision. In the real world . . . human beings (including triers of fact) are not compelled to reason that way.["]' " (*Id.* at p. 667, quoting *Roebuck v. Drexel University* (3d Cir. 1988) 852 F.2d 715, 734, fn. 32.)

*Clark* and *Roebuck* both involved tenure decisions made after several levels of review and recommendations. In *Clark,* there was evidence of discrimination by some individuals involved in some stages of the review process; in *Roebuck,* there was evidence supporting an inference of pretext in the reasons given for some of the recommendations. In the context of the academic tenure system, in which decisions and recommendations made in earlier levels of review may be available to decision makers at subsequent levels, it clearly makes sense to acknowledge that the final decision may be influenced by the discriminatory intent of individuals playing a role at any point in the decisionmaking process. The situation in the present case is very different, as it involves discrete hiring decisions made by unconnected individuals in different departments. Moreover, *Clark* and *Roebuck* merely held that a jury is entitled to infer that discriminatory intent in some aspects of a tenure decision may influence the ultimate decision. Here, each of the individuals who decided not to hire appellant for a particular position disclaimed knowledge of the fact that appellant had previously filed a grievance against the University. Without such knowledge, these individuals could not have acted in retaliation for appellant's filing of the grievance.

### B.

Appellant additionally contends that even if he did not provide direct evidence that respondent's failure to rehire him was based on retaliatory and discriminatory motives, summary judgment was improperly granted because respondent failed to produce legitimate reasons for not rehiring him and he raised triable material issues of fact on the issue of pretext.

■ Respondent's summary judgment motion did not address the sufficiency of appellant's prima facie case of discrimination but rather focussed on the second stage of the *McDonnell Douglas* inquiry, arguing its decisions not to rehire appellant were based on legitimate, nondiscriminatory factors. As detailed in the statement of facts above, each of the decision makers who

decided not to hire appellant in 1996 explained in a declaration under penalty of perjury specific job-related reasons why appellant was not qualified for the position at issue and why the candidate selected for the position was better qualified.

At this point, to avoid summary judgment, appellant had to " 'offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.' " (*Horn, supra,* 72 Cal.App.4th at pp. 806-807.) An employee in this situation can not "simply show the employer's decision was wrong, mistaken, or unwise. Rather, the employee ' "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for the [. . . asserted] non-discriminatory reasons.' [Citations.]" [Citations.]' (*Hersant, supra,* 57 Cal.App.4th at p. 1005.)" (*Horn, supra,* 72 Cal.App.4th at p. 807.)

Appellant argues that respondent's reasons for failing to hire him were subjective and therefore insufficient. The cases upon which he relies, however, are quite different from this one. In *Miles v. M.N.C. Corp., supra,* 750 F.2d 867, 872, the plaintiff was not rehired because she was "not a good worker" while the person hired in her stead was; the employer had no guidelines for evaluating employees' performance, no written worker evaluations or regular checks on employees' work habits, and all the employee evaluations were performed by one individual. In *Lee v. Russell County Bd. of Educ.* (11th Cir. 1982) 684 F.2d 769, 775, the reasons given for the plaintiff's termination were that he was " 'not his own man' and was 'not the leader we needed.' " In both of these cases, the employment decisions were made on the basis of vague and subjective criteria. As *Lee,* explained, "[e]xcessively subjective and vague criteria may be insufficient because they do not allow reasonable opportunity to rebut." (*Id.* at pp. 775-776.)

In the present case, each job for which appellant applied had a written set of qualifications and each decision maker explained with specificity the qualifications found to be lacking in appellant. Clearly, appellant was given sufficient objective criteria to be able to attempt to rebut the proffered reasons by demonstrating his competence. The fact that appellant's qualifications were measured qualitatively or subjectively by each of the decision makers does not defeat a summary judgment motion. The process by which individuals' qualifications and work performance are measured against job

requirements is often at least partially a subjective one on the part of the evaluator. (See *Addy v. Bliss & Glennon, supra,* 44 Cal.App.4th at p. 218 [demotion based on supervisor's evaluation of employee's performance]; *University of Southern California v. Superior Court* (1990) 222 Cal.App.3d 1028, 1032-1022, 1036-1039 [272 Cal.Rptr. 264] [denial of promotion to professor based on colleagues' assessment of scholarship, teaching and service].) "The decisionmaker's motive and state of mind will almost always be in dispute in such cases," but "the plaintiff ' "must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses." ' [Citations.]" (*Horn, supra,* 72 Cal.App.4th at p. 817.)

With respect to specific positions, appellant argues that Jolene Adams "arbitrarily decided" not to interview him for the electronics technician position in the college of chemistry because she did not want to wait for him to return from an out-of-town funeral, complaining that no evidence was submitted to document the urgency Adams claimed for filling the position. Adams's declaration, however, constituted evidence that "[t]he College had an urgent need to fill the position" and appellant offered no reason to challenge its credibility. Nor did appellant offer any evidence to demonstrate that Adams's assessment that the person hired for the position was more qualified than appellant was pretextual. The job vacancy listing for this position included in the job description such tasks as installing, repairing and troubleshooting hardware on individual computer workstations and network servers; the posted qualifications included "[e]xperience repairing MacIntosh and IBM-compatible computers and printers. Experience with diagnostic utilities . . . CNE [Certified Network Engineer] or related certifications . . . ." The resume of the individual hired for this job demonstrated extensive experience with local area network and stand-alone computers. While appellant claims he had comparable and more recent "repair and troubleshooting experience," he documents this statement by reference to his deposition testimony that his job duties before his layoff were "class equipment maintenance, electronics installation, electrical installation, computer maintenance, computer installation" and attending to professors' needs for things such as installing or repairing a modem.[12] Notably, appellant's description of his job duties includes nothing about familiarity with computer networks or experience with troubleshooting. "[A]n employee's subjective personal judgments of his or her competence alone do not raise a genuine issue of material fact." (*Horn, supra,* 72 Cal.App.4th at p. 816.)

Appellant next complains that he was not interviewed for the two positions with the department of communications and network services. He

---

[12]Appellant's additional citations to the record do not refer to any specifics of his work experience.

maintains that the University's preferential rehire policy required an interview and that the decision not to hire him was too subjective to be viewed as legitimate or nondiscriminatory. With regard to the former point, the evidence as to whether an interview was required is conflicting. Respondent's "Preferential Referral Form"—to which appellant does not cite—states that an interview is required for preferential referral applicants. Respondent's "Staff Personnel Policies," however, in setting out the preferential reemployment policy, say nothing about rights to interviews. Burke-Johnson stated in her declaration that a department could evaluate a preferential rehire candidate's qualifications by reviewing the application *or* by interviewing the candidate.

Appellant notes that an employer's violation of its own hiring policies may constitute circumstantial evidence of discrimination. (*Lam v. University of Hawai'i* (9th Cir. 1994) 40 F.3d 1551, 1566, fn. 27.) Thus, in *Lam*, the plaintiff filed a discrimination complaint regarding the defendant's search for an academic position and the defendant agreed to make certain changes in its procedures. Its failure to do so was viewed as supporting an inference of discrimination in the suit resulting from its second search to fill the same position. *Lam* relied on case law holding that an employer's failure to follow its own affirmative action plan, while not a per se violation of title VII, may be circumstantial evidence of discrimination. (*Gonzales v. Police Dept., City of San Jose, Cal.* (9th Cir. 1990) 901 F.2d 758, 761.) In these cases, the logical nexus between the employer's violation of its policies and the inference of discrimination is clear. In the present case, appellant is not alleging a violation of any antidiscrimination policy but of the preferential rehire policy. Assuming the policy required that all former employees with preferential rehire rights be interviewed for any position for which they applied, regardless of the applicant's resume, violation of such a policy does not so readily support an inference of discrimination or retaliation. Here, the uncontradicted evidence was that appellant's resume demonstrated an absence of the experience deemed necessary by the department to which he was applying. In this context, any inference of discrimination or retaliation from the failure to interview would be speculative and certainly does not rise to the level of the substantial evidence of pretext required to avoid summary judgment. (*Horn, supra,* 72 Cal.App.4th at p. 807; *Godwin v. Hunt & Wesson, Inc., supra,* 150 F.3d at p. 1222.)

As for the second point, contrary to appellant's assertion, the record does include a job description for the positions with the department of communications and network services. According to this description, the primary duties of each of the two jobs involved installing workstation connections to the data communication network and investigating and resolving communications problems reported by users. The job description listed specific data

communications standards and media, equipment, protocols and computer operating systems with which the applicant was required to have a working knowledge. The declaration of the decision maker for these positions, Sawyer, as described above, stated that appellant's resume indicated his experience "was concentrated in instrument repair and maintenance" and that he did not have the "necessary and relevant experience" with "protocols, media types, networking equipment, and network test equipment." The individual offered the position had eight years of experience in the department and "a working knowledge of and demonstrated experience in not only all aspects of networking listed above but also internal policies and practices." As previously discussed, the fact that appellant's experience and qualifications for the positions were evaluated subjectively does prevent the determination that he was not qualified from being a legitimate, nondiscriminatory reason for his not being hired. (*Horn, supra,* 72 Cal.App.4th at p. 817; *Addy v. Bliss & Glennon, supra,* 44 Cal.App.4th at p. 218; *University of Southern California v. Superior Court, supra,* 222 Cal.App.3d at pp. 1032-1022, 1036-1039.)

With regard to the computer resource specialist II position in the library systems department, appellant again argues the failure to interview him violated respondent's preferential rehire policy. He claims the reasons given for not hiring him—that he had no experience with specific software and hardware applications and with the help desk—were not legitimate because the successful candidate was going to be trained in specific job requirements in these areas. Paul Payne, who decided not to hire appellant for this position, listed in his declaration the qualifications for the position and stated that appellant lacked the experience or qualifications for the job in that he "did not have the requisite experience with software applications such as Web browsers, X-Windows, TCP/IP client software or Netware client software" and "did not have help desk experience" or "sufficient knowledge of and experience in hardware and software installation, diagnosis [and/or] trouble-shooting." The individual who was offered the job was promoted from within the department and "demonstrated customer service skills, help desk experience and skills, knowledge of Campus and Library computing resources, and knowledge of and experience in hardware and software installation, diagnosis and trouble-shooting."

Appellant's argument regarding this position is based on a one-page "Training Plan" that appears in the record without explanation as to its relation to the position for which appellant applied. The Training Plan lists a number of areas in which "the incumbent" would receive training, including help desk, identifying computer components, installing workstation software, testing and troubleshooting, installing network software and adapters, stopping and restarting terminal lines, and installing printers. This page,

which is numbered D33, appears to be part of a larger document that is not included in the record. Even assuming it accurately describes training to be given to the person hired for the position at issue, its existence would not undermine the legitimacy of the department's decision to hire a person with some minimum level of familiarity with the tasks involved.

Appellant states that James Evans waived some of the qualifications for the development tech II job in the material science and mineral department so as to hire a machine maintenance man "who was supposed to have science laboratory, technical and computer experience," but did not waive qualifications for appellant. Appellant offers no evidence to support his allegation that posted qualifications of the job were waived. Nor does he offer any evidence that he was qualified for the position. The posted qualifications for this job were "[e]xtensive machine shop experience or equivalent. Science laboratory experience or equivalent. Technical experience using basic electronic equipment and computers." According to Evans's declaration, appellant's "machine skills were considered not up to the necessary level" while the person offered the position "was an accomplished machinist" who "also had experience working with chemicals." A portion of the resume of the latter individual documents these qualifications. Appellant, by contrast, stated in his deposition that he told the interviewers for this position he "didn't do any jobs machinists type work, that wasn't [his] expertise" and that he had "[s]ome familiarity with some equipment but nothing to be a machinist."

Finally, appellant challenges the conclusion of Ferenc Kovac that he was not qualified for the positions as electronic technician trainee in the electrical engineering and computer sciences department. Kovac stated in his declaration that appellant was "considered weak in his understanding of basic electronic circuits and computer components; . . . lacked knowledge of the concept of the MAC operating system, and the type of CPU systems in PCs, and . . . couldn't describe the functionality of computer boards he had used, data acquisition or types of video cards." Appellant denies these weaknesses, citing his deposition testimony that he thought he had answered all the interviewer's questions about electronic circuits and computer components and did not know why he would have been viewed as weak in the areas indicated. He offers no evidence, however, to support his own view of his qualifications. Moreover, the relevant question is not whether Kovac correctly evaluated appellant's skills but whether he acted with discriminatory animus. (*Hersant v. Department of Social Services, supra,* 57 Cal.App.4th at p. 1005.) Appellant's self-assessment is insufficient to undermine the legitimacy of the reasons given for not offering him these positions.

In sum, respondent offered evidence, through the declarations of the individuals who decided not to hire appellant for each of the positions for

which he applied in 1996, that appellant was not hired because he lacked specific qualifications for the jobs and that the decision makers were unaware of appellant's past filing of a grievance against the University. Appellant offered no evidence to demonstrate the falsity of the decision makers' claimed unawareness of his prior grievance, central to his retaliation claim. Nor did he offer evidence demonstrating " ' "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [respondent's] proffered legitimate reasons" ' " that a reasonable trier of fact could find those reasons " ' "unworthy of credence' " ' and infer them to be pretextual. (*Horn, supra,* 72 Cal.App.4th at p. 807.)

The judgment is affirmed.

Haerle, J., and Lambden, J., concurred.