Filed 1/21/16  Webb v. Cox Communications California CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CATANA WEBB,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COX COMMUNICATIONS CALIFORNIA, LLC et al.,<br><br>    Defendants and Respondents. | D067243<br><br><br>(Super. Ct. No. 37-2012-00083770-CU-WT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Eisenberg & Associates, Michael B. Eisenberg and Joseph S. Socher for Plaintiff and Appellants.

Ferris & Britton, Michael R. Weinstein and W. Lee Biddle for Defendants and Respondents.

## INTRODUCTION

Catana Webb appeals from a summary judgment in favor of Cox Communications California, LLC (Cox) and Julisan Jones on Webb's second amended complaint (complaint), which alleged causes of action for age discrimination, age harassment, and retaliation in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Webb contends we must reverse the judgment because there are triable issues of material fact as to whether Cox discharged her, Jones harassed her, and Cox failed to rehire her because of her age. She also contends there are triable issues of material fact as to whether Cox failed to rehire her in retaliation for her filing an age discrimination and age harassment complaint with the Department of Fair Employment and Housing (DFEH). We are unpersuaded by Webb's contentions and affirm the judgment.

## BACKGROUND

Cox employed Webb in various customer service positions from August 1996 until her discharge, effective March 2012. At the time of her discharge, Webb worked with a group providing customer service to Cox's business customers in San Diego. At least 90 percent of her job duties involved handling straightforward billing calls, which the parties refer to as Tier 1 calls.

In 2011, Cox decided to consolidate and reorganize its operations, including rerouting its business customer service calls through a national call center to offices outside of California. In early 2012, Cox began rerouting its San Diego Tier 1 calls through the national call center. Concomitantly, Cox decided to lay off the San Diego

employees whose primary duties involved handling Tier 1 calls. Specifically, Cox laid off Webb, then age 54, and another employee, then age 23. Cox planned to lay off a third employee, then age 33, who also primarily handled Tier 1 calls. However, Cox opted to temporarily retain the employee because the employee was bilingual and had experience handling complex disconnect calls. Of the remaining employees in Webb's work group, three had no responsibility for handling Tier 1 calls and four others handled Tier 1 calls as needed, but primarily handled more complex calls, referred to by the parties as Tier 2 or 3 calls. Nonetheless, within 10 months of Webb's discharge, Cox had laid off these employees as well.

During the last four years of Webb's employment, Jones supervised her. Jones regarded Webb as a good employee and Webb admitted Jones never gave her an unfair performance review or otherwise unfairly criticized her performance. In fact, while under Jones's supervision, Webb consistently received year-end merit pay increases based on Jones's appraisal of Webb's work performance. In addition, after Webb learned Cox was going to lay her off, Jones assisted Webb in identifying other position openings within Cox to which Webb could apply.

Although Webb acknowledged she was happy working for Jones, Webb nonetheless claimed Jones harassed her with ageist remarks. Webb identified five such remarks. First, about a year after Jones began supervising Webb, Jones remarked "[a]ge before beauty, my dear" as both she and Webb were entering an elevator. Second, at least a year before Webb's discharge, at a staff birthday party for Webb and another employee, Jones observed that Webb was now the oldest member of Jones's team and

3

another employee was now the youngest member. Third, sometime within a year or two before Webb's discharge, while she and Jones reviewed a recorded customer call in which Webb did not remember the answer to a customer's question and had to reference some paperwork, Jones remarked to Webb, "Well, your Alzheimer's must be kicking in." Fourth, sometime within a year of her discharge, as Webb was returning to work from a break, Jones saw Webb and remarked, "Oh, girl. You're moving slow." Finally, about six to eight months before Webb's discharge, Jones commented that Webb needed to recolor her hair because her gray roots were showing. Jones denied making these remarks.

Webb further claims Jones tolerated ageist remarks from other employees. Specifically, when one employee complained in front of Jones and Webb that another employee was "senile" and "needed to retire," Jones did not reprimand him. Instead, Jones laughed and said, "You shouldn't say that." Similarly, when the same offending employee described yet another employee as "senile," Jones jokingly told him to "stop it." The offending employee denied making these remarks.

After learning of her discharge, Webb submitted resumes for over 50 positions within Cox. For various reasons, she was not hired for any of the positions. In several instances, Cox cancelled the position openings and did not hire anyone for them. In a few instances, Webb submitted her resume after Cox had identified an initial candidate pool from earlier submissions. In four instances, the position openings required relocation to another state, which Webb was unwilling to do. Of the remaining position

4

openings, either Webb did not meet the minimum qualifications for the position or Cox hired others it deemed better qualified than Webb.[1]

Approximately six months after the effective date of her discharge, Webb filed a complaint with the DFEH alleging Cox discharged her and Jones harassed her because of her age. Eighteen months later, Webb filed a second DFEH complaint alleging Cox failed to rehire her because of her age and because she filed the first DFEH complaint. The recruiters within Cox who reviewed and rejected Webb's applications for rehire denied knowing her age or that she had filed a DFEH complaint.

The instant action alleges causes of action against Cox for age discrimination and retaliation and a cause of action against both Cox and Jones for age harassment. Cox and Jones moved for summary judgment or, alternatively, summary adjudication of Webb's causes of action. As to Webb's age discrimination cause of action, Cox argued Webb could not establish a prima facie case of discrimination nor could she establish Cox's business reasons for discharging her were pretextual. As to Webb's age harassment cause of action, Cox and Jones argued Webb could not establish Jones's alleged ageist remarks were sufficiently severe or pervasive to alter the conditions of Webb's employment and create an abusive working environment. As to Webb's retaliation cause of action, Cox argued Webb could not establish a causal connection between the filing of her first DFEH

---

[1] Webb's last three resume submittals falsely stated she had been employed with Cox as a senior marketing analyst from 1996 to 2012. Webb denies she was trying to mislead Cox about her former job title. Rather, she claims she was simply stating she had the experience and qualifications for a marketing analyst position. The record does not show Cox based any of its decisions not to rehire Webb on resume inaccuracies.

complaint and her failure to obtain any of the positions within Cox for which she applied. The trial court largely agreed with Cox's and Jones's arguments and granted their motion.

DISCUSSION

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.] Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)

I

*Age Discrimination Cause of Action*

A

FEHA generally prohibits an employer from refusing to hire or from discharging a person because of the person's age. (Gov. Code, § 12940, subd. (a).) "In cases alleging employment discrimination, we analyze the trial court's decision on a motion for summary judgment using a three-step process that is based on the burden-shifting test that was established by the United States Supreme Court for trials of employment discrimination claims in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [*McDonnell Douglas*]." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830,

6

860 (*Serri*).) "[U]nder the first step of the *McDonnell Douglas* framework, the plaintiff may raise a presumption of discrimination by presenting a 'prima facie case,' the components of which vary depending upon the nature of the claim, but typically require evidence that ' "(1) [the plaintiff] was a member of a protected class, (2) [the plaintiff] was qualified for the position he [or she] sought or was performing competently in the position ... held, (3) [the plaintiff] suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance [that] suggests discriminatory motive." ' [Citation.] 'A satisfactory showing to this effect gives rise to a presumption of discrimination which, if unanswered by the employer, is mandatory—it requires judgment for the plaintiff.' [Citations.] However, under the second step of the test, 'the employer may dispel the presumption merely by articulating a legitimate, nondiscriminatory reason for the challenged action. [Citation.] At that point the presumption disappears.' [Citation.] Under the third step of the test, the 'plaintiff must ... have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive.' " (*Serri*, *supra*, at pp. 860-861.)

This framework is modified in the summary judgment context: " 'the employer, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory factors.' " (*Serri*, *supra*, 226 Cal.App.4th at p. 861.) "In this context, 'legitimate' reasons 'are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding

7

*of discrimination.*' " (*Reeves v. MV Transportation, Inc.* (2010) 186 Cal.App.4th 666, 673 (*Reeves*).) "If the employer meets its initial burden, the burden shifts to the employee to 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.' " (*Serri*, at p. 861.)

An employee " ' "may establish pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' " ' " (*Batarse v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 820, 834 (*Batarse*).) "It is not sufficient for an employee to make a bare prima facie showing or to simply deny the credibility of the employer's witnesses or to speculate as to discriminatory motive. [Citations.] Rather it is incumbent upon the employee to produce 'substantial responsive evidence' demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the part of the employer." (*Serri*, *supra*, 226 Cal.App.4th at p. 862.) "[S]ummary judgment for the employer may thus be appropriate where, given the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive, even if it may technically constitute a prima facie case, is too weak to raise a rational inference that discrimination occurred." (*Guz*, *supra*, 24 Cal.4th at p. 362; *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1004-1005 (*Hersant*).)

B

1

Webb bases her age discrimination cause of action on both her discharge and on Cox's subsequent failure to rehire her. Among the grounds for summary judgment, Cox argued it provided substantial evidence of legitimate, nondiscriminatory reasons for its actions and Webb could not meet her countervailing burden of providing substantial evidence Cox's reasons were a pretext for intentional discrimination. (*Batarse*, *supra*, 209 Cal.App.4th at p. 834; *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 68 (*Morgan*).)

To support its arguments as to Webb's discharge, Cox provided evidence it discharged her because it transferred at least 90 percent of her work to a national call center outside the state and no longer needed her services. To support its arguments as to its failure to rehire her, Cox provided evidence of the various reasons she was either not considered for or not selected for the positions to which she applied, principally her lack of minimum qualifications or the existence of candidates Cox deemed better qualified. Cox's reasons for discharging Webb and failing to rehire her, if true, are facially unrelated to her age and preclude a finding of discrimination. (*Reeves*, *supra*, 186 Cal.App.4th at p. 673; *Coleman v. Quaker Oats Co.* (9th Cir. 2000) 232 F.3d 1271, 1282.)[2] Accordingly, Cox was entitled to summary judgment as a matter of law unless Webb

---

[2]     "While state and federal legislation concerning age discrimination differs in some respects, their objectives are identical, and courts of this state have looked to federal law to aid in the interpretation of analogous provisions of California statutes." (*Hersant*, *supra*, 57 Cal.App.4th at p. 1002, fn. 1.)

9

presented substantial evidence Cox's true reasons were discriminatory. (*Coleman v. Quaker Oats Co.*, *supra*, at p. 1282.)

## 2

### a

As to her discharge, Webb does not dispute her work principally involved answering Tier 1 calls. She also does not dispute Cox transferred her work outside of California and the work no longer existed after her discharge. Instead, she presented evidence she had experience performing at least some of the work temporarily remaining in the San Diego office after Cox transferred her work. Essentially, Webb asserts Cox could have and should have transferred another employee's work to her and discharged the other employee instead of her. However, "[w]hen an employer modifies its workforce for business reasons, it has no obligation to transfer an employee to another position within the company." (*Gibbs v. Consolidated Services* (2003) 111 Cal.App.4th 794, 800; accord, *Rose v. Wells Fargo & Co.* (9th Cir. 1990) 902 F.2d 1417, 1422.) Further, where, as here, Webb's temporarily retained coworkers performed distinct duties for which they were qualified, it is not reasonable to conclude from their retention that age was a significant factor in the decision to temporarily retain them rather than Webb. (See *Guz, supra*, 24 Cal.4th at p. 369-370.)

### b

Webb also provided evidence Jones, who recommended Webb's discharge, had both made and tolerated ageist remarks as recently as six months before Webb's discharge. However, such stray remarks, by themselves, are not sufficient to create a

10

triable issue of age discrimination. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 541-542.) At best, these remarks raise only a weak suspicion discrimination was the basis for Webb's discharge. While this weak suspicion may be sufficient to establish a prima facie case of discrimination, it does not amount to substantial evidence of discrimination necessary to defeat a summary judgment motion. (See *Serri*, *supra*, 226 Cal.App.4th at pp. 867-868.) Accordingly, we conclude Webb failed to meet her burden of producing substantial evidence Cox's stated reasons for discharging her were pretextual or that Cox acted with discriminatory animus such that a reasonable trier of fact could conclude Cox engaged in intentional discrimination. (See *id*. at p. 868.)

3

a

As to Cox's failure to rehire Webb, we preliminarily note Webb did not exhaust her administrative remedies as to this aspect of her discrimination claim or as to her related retaliation claim (see Discussion, part III, *post*) until she submitted her second DFEH complaint on February 24, 2014. (*Morgan*, *supra*, 88 Cal.App.4th at p. 63 [an employee may not file a civil action alleging a FEHA violation until the employee first exhausts her administrative remedies by filing a complaint with the DFEH and obtaining a right to sue notice].) The applicable limitations period for FEHA claims is one year from the date upon which the alleged unlawful practice occurred. (Gov. Code, § 12960, subd. (d); *Morgan*, *supra*, at p. 63.) Webb's second DFEH complaint states the last act of discrimination and retaliation occurred on or before July 9, 2013. Thus, Webb's claims for discriminatory and retaliatory failure to rehire her are limited to Cox's failure to rehire

11

her for positions to which she applied between February 24, 2013, and July 9, 2013.  (See *Morgan*, at p. 63.)

Contrary to Webb's assertion, the continuing violation doctrine does not apply to extend the limitations period for her failure to rehire claims.   "A continuing violation may be established by demonstrating 'a company[-]wide policy or practice' or 'a series of related acts against a single individual." (*Morgan*, *supra*, 88 Cal.App.4th at p. 64.)  The first type of continuing violation does not apply as Webb has not alleged Cox has a company-wide policy of discrimination.  (*Id.* at p. 65.)  For the second type of continuing violation to apply, Webb must establish:  (1) Cox's various decisions not to rehire her were closely related; and (2) a reasonable person exercising reasonable diligence would not have known Cox was unlawfully discriminating or retaliating at the time it made any of the more than 50 earlier decisions not to rehire her.  (*Ibid.*)  Assuming, without deciding, Webb could establish the first requirement, there is no evidence she could establish the second requirement.  Rather, a decision not to rehire an employee generally has " ' "the degree of permanence which should trigger an employee's awareness of and duty to assert [his] or her rights." ' "  (*Id.* at p. 66.)

b

With the applicable limitations period in mind, we consider Webb's substantive arguments.  She contends Cox's stated reasons for failing to rehire her were pretextual because:  (1) her high school graduation date and her years of work experience, which were listed on her resume, indicated she was an older worker; (2) the persons selected for at least some of the positions she sought were either no more qualified or less qualified

12

than she; and (3) her younger coworkers had no difficulty finding other positions within Cox after their layoffs. The first and third points, while relevant to Webb's prima facie case, do not aid her burden of showing pretext. (*Serri*, *supra*, 226 Cal.App.4th at p. 862 [an employee does not meet her burden of showing a triable issue of pretext by making a bare prima facie showing, or simply denying the credibility of the employer's witnesses, or speculating as to the employer's discriminatory motive]; see *Reeves*, *supra*, 186 Cal.App.4th at pp. 673-674 [an employee does not meet her burden of showing pretext by simply showing the employer's decision was wrong or mistaken; the factual dispute is whether the employer's motivation for its decision was discriminatory animus, not whether the employer's decision was wise, shrewd, prudent, or competent].)

The second point aids Webb's burden of showing pretext only if supported by evidence Webb's qualifications were vastly superior to the qualifications of the persons Cox opted to employ instead of her. (*Reeves*, *supra*, 186 Cal.App.4th at p. 675.) Webb only attempted to make this showing as to three positions: Media Sales Service Specialist I, Account Services Representative, and Retail Solutions Specialist. We need not address Webb's arguments regarding the first two positions as the record shows the hiring decisions for these positions were made before February 24, 2013, and are, consequently, outside the applicable limitations period.

As to the Retail Solutions Specialist position, the record shows Webb never completed the application process for this position. In addition, while the people hired for this position may have had less general work experience and less telecommunications experience than Webb, they all had recent customer-facing experience in a retail

13

environment, which Webb did not have. We cannot reasonably infer from this record Webb's qualifications were "vastly superior" to those hired, and Webb's subjective views to the contrary are insufficient to raise a triable issue of material fact. (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 816 ["an employee's subjective personal judgments of his or her competence alone do not raise a genuine issue of material fact"].) We, therefore, conclude Webb failed to meet her burden of producing substantial evidence Cox's stated reasons for failing to hire her were pretextual or that Cox acted with discriminatory animus. (See *Serri*, *supra*, 226 Cal.App.4th at p. 868.)

II

*Age Harassment*

In addition to prohibiting age-related discrimination, FEHA prohibits age-related harassment. (Gov. Code, § 12940, subd. (j).) To prevail on a harassment claim, a plaintiff must produce evidence showing she was subjected to offensive comments or other abusive conduct based on a protected characteristic and the comments or conduct was sufficiently severe or pervasive to alter the conditions of her employment. (*Serri*, *supra*, 226 Cal.App.4th at p. 871.) " 'Whether the conduct of the alleged harassers was sufficiently severe or pervasive to create a hostile or abusive working environment depends on the totality of the circumstances. " 'These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " [Citations.] " 'Common sense, and an appropriate sensibility to social context, will enable courts and juries to distinguish between simple teasing or

14

roughhousing ... and conduct [that] a reasonable person in the plaintiff's position would find severely hostile or abusive.' " [Citations.]  As in sex-based harassment claims, "[t]he plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's [fn. omitted] work performance and would have seriously affected the psychological well-being of a reasonable employee and that [he or she] was actually offended." ' "  (*Id.* at p. 870.)

Here, with respect to the severity of the harassment, the alleged ageist remarks attributed to and tolerated by Jones are not "the type of statements that 'would have interfered with a reasonable employee's ... work performance and would have seriously affected the psychological well-being of a reasonable employee.' "  (*Serri*, *supra*, 226 Cal.App.4th at p. 871.)  Indeed, the record shows Webb was a good employee, received favorable performance reviews, and was happy working at Cox.  While the alleged remarks might be in poor taste, "FEHA is not a general civility code.  [Citations.] 'Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms or conditions of employment.' "  (*Juell v. Forest Pharms., Inc.* (E.D. Cal. 2006) 456 F.Supp.2d 1141, 1157, citing *Faragher v. City of Boca Raton* (1998) 524 U.S. 775, 788 [118 S.Ct. 2275, 141 L.Ed.2d 662].)

"With respect to the pervasiveness of harassment, courts have held an employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature.  [Citations.]  That is, when the harassing conduct is not severe in the extreme, more than a few isolated incidents must have occurred to prove a claim

15

based on working conditions." (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283-284.) Under this standard, the seven or eight alleged ageist remarks made by or tolerated by Jones over the course of three to four years are not sufficiently pervasive to support a claim for harassment. (See *Lyle v. Warner Brothers Television Productions*, *supra*, at pp. 283-284; *Serri*, *supra*, 226 Cal.App.4th at p. 871; see also *Candelore v. Clark County Sanitation Dist.* (9th Cir. 1992) 975 F.2d 588, 590 [sporadic incidents of inappropriate behavior do not create a hostile or abusive working environment].) Consequently, we conclude Webb has not established there is a triable issue of material fact as to her age harassment cause of action.

III

*Retaliation Claim*

FEHA also prohibits an employer from retaliating against a person because the person has filed a DFEH complaint. (Gov. Code, § 12940, subd. (h).) " ' "To establish a prima facie case of retaliation, a plaintiff must show that she engaged in protected activity, that she was thereafter subjected to adverse employment action by her employer, and there was a causal link between the two." ' [Citations.] 'The retaliatory motive is "proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter." [Citation.] "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.' " [Citation.]' [Citation.]

16

'Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.' " (*Morgan*, *supra*, 88 Cal.App.4th at pp. 69-70.)

In this case, Cox presented affirmative evidence showing none of the recruiters who processed Webb's applications for rehire had any knowledge of Webb's DFEH complaint. Webb presented no contradictory evidence. In the absence of evidence the recruiters were aware of Webb's DFEH complaint, she cannot establish the causal link necessary to raise a triable issue of material fact as to her retaliation claim.[3] (*Morgan*, *supra*, 88 Cal.App.4th at p. 74.)

DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.

McCONNELL, P. J.

WE CONCUR:

HALLER, J.

AARON, J.

---

[3]     Given our conclusion Webb has not established a triable issue of material fact as to any of her causes of action, we need not decide whether Webb could establish a triable issue of material fact as to her punitive damages claim.

17