Filed 10/12/22; certified for publication 11/8/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JANE DOE, | |
|    Plaintiff and Respondent, | G060554 |
|       v. | (Super. Ct. No. 30-2019-01045961) |
| SOFTWARE ONE, INC., | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, David A. Hoffer, Judge.  Affirmed.

Jackson Lewis, Elizabeth A. Murphy, Reem Blaik, Jennifer S. Gutenberg, and Dylan B. Carp for Defendants and Appellants.

Trujillo & Winnick, Anthony W. Trujillo and Alexander H. Winnick for Plaintiff and Respondent.

\*       \*       \*

## FACTS AND PROCEDURAL HISTORY

Plaintiff Jane Doe was the founder and owner of a company called House of Lync, which was purchased by defendant SoftwareONE Inc. As part of the acquisition, plaintiff was offered a position with defendant as "Head Solutions Sales, Skype for Business," which she accepted. At the time, plaintiff was 49 years old.

Nine months later, defendant hosted a "National Sales Kick-off" event in Cancun, Mexico. Plaintiff attended, and felt the event was "full of outlandish behavior." For example, plaintiff testified "the CEO Patrick Winter expected the women to join him on stage to dance, and he poured champagne down their throats." Plaintiff refused to participate, and later complained to the president of defendant's American division.

Beginning shortly after the event, defendant received complaints about plaintiff, including her "demeaning manner, withholding of important information, bullying, humiliation, and other unacceptable behaviors." Defendant reassigned plaintiff to a new position: "Global Alliances and Practice Development Leader, Skype for Business." Frustration about plaintiff within defendant's leadership team continued after the reassignment. About six months after plaintiff's reassignment, Jason Cochran, defendant's director of technical solutions told plaintiff, during an after-work event, that defendant "is a guy's club," plaintiff was "never going to make it" working for defendant, and called plaintiff a "bitch." After plaintiff complained, defendant's human resources manager investigated, "coached" Cochran, and informed plaintiff that defendant did not condone this behavior.

A few months later, defendant purchased another company similar to plaintiff's. Defendant then terminated plaintiff, citing poor performance and redundancy. Plaintiff sued defendant, alleging her firing was discriminatory and retaliatory.

Defendant moved for summary judgment. Defendant argued (1) plaintiff could not establish a prima facie case for discrimination or retaliation, (2) defendant had legitimate, nondiscriminatory reasons for terminating plaintiff, and (3) plaintiff could not

2

show defendant's nondiscriminatory reasons were pretextual. The trial court granted defendant's motion and entered judgment for defendant.

Plaintiff moved for a new trial. Plaintiff argued, among other things, that the trial court had failed to apply *Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75 (*Light*), where the Court of Appeal held, "The showing of pretext, while it may indicate retaliatory intent or animus, is not the sole means of rebutting the employer's evidence of nonretaliatory intent." (*Id.* at p. 94.) Plaintiff contended that, even absent evidence of pretext, her claims could survive (and should have survived) summary judgment because she made a sufficient showing of retaliatory intent.

The trial court agreed and granted plaintiff's motion. The trial court found "there was no substantial evidence to establish pretext," but that the evidence, "taken as a whole, *could* support a reasoned inference of discriminatory or retaliatory animus." The trial court included in its ruling a nonexclusive list of items of evidence supporting animus: "evidence that plaintiff was replaced by younger males, both when she was demoted and terminated [citation], evidence that plaintiff had been performing well at the company [citation], comments by [Cochran] that the company 'is a guy's club' so she was 'never going to make it' and by another executive that she was a 'bitch' [citation], and the arguable temporal connection between her demotion and her asserted complaints about a discriminatory culture."[1] With respect specifically to the three quoted statements, the trial court overruled defendant's hearsay objection. Defendant timely appealed.

---

[1] As defendant points out on appeal, the trial court appears to have mistakenly believed Cochran's "bitch" comment came from another executive. The evidence shows Cochran made all three comments. Defendant does not appear to argue this makes any significant difference, and we see none.

DISCUSSION

Defendant argues the trial court erred by granting plaintiff's motion for a new trial. Specifically, defendant contends plaintiff did not produce evidence that, per *Light*, could ""support[] a reasoned inference that the challenged action was the product of discriminatory or retaliatory animus.""" (*Light*, *supra*, 14 Cal.App.5th at p. 94.) Defendant's argument rests on five principal contentions: (1) the "same-actor" inference applies, which increases the burden on plaintiff; (2) there is no substantial evidence plaintiff was replaced by younger males; (3) plaintiff's evidence showed she did not meet her performance goals; (4) Cochran's comments are inadmissible hearsay and not probative of defendant's motives; and (5) defendant's employees' complaints about plaintiff predated her protected activity, which occurred long before any adverse employment actions.

### 1. *Standard of Review*

Defendant's contentions implicate two potential standards of review: that applicable to an order granting a motion for new trial based on a finding the trial court erroneously granted summary judgment, and that applicable to an evidentiary ruling in the same context.

As to the trial court's determination on the motion for new trial itself, defendant contends the de novo standard of review applies because the trial court determined it made an error of law in granting defendant's motion for summary judgment. Plaintiff contends the abuse of discretion standard applies. We agree with defendant. On this point, this case is indistinguishable from *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, in which the Supreme Court held the de novo standard of review applies when a trial court grants a motion for new trial based on an error of law in granting a summary judgment motion. (*Id.* at pp. 859-860.)

4

As to the evidentiary issues, defendant again contends the de novo standard of review applies, citing *Pipitone v. Williams* (2016) 244 Cal.App.4th 1437 (*Pipitone*). Here, we acknowledge a split in authority. In *Pipitone*, the Sixth District Court of Appeal concluded the de novo standard of review applied to evidentiary rulings "determined on the papers and based on questions of law such as hearsay." (*Id.* at p. 1451.) The *Pipitone* court based its conclusion on *Reid v. Google, Inc.* (2010) 50 Cal.4th 512 (*Reid*).

In *Reid*, the Supreme Court applied the de novo standard of review to evidentiary objections upon which the trial court had failed to rule. (*Reid*, *supra*, 50 Cal.4th at p. 535.) The Supreme Court reasoned, "First, because there was no exercise of trial court discretion, the Court of Appeal had no occasion to determine whether the trial court abused it. Second, Google expressly invited the Court of Appeal to address its evidentiary objections, which the Court of Appeal reviewed de novo, consistent with the general standard of review applicable to summary judgment rulings, that any doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion." (*Ibid.*) The Supreme Court expressly declined to consider "whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo." (*Ibid.*) The *Pipitone* court was joined, at least in part, by the Fourth District, Division One, in *Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, which held, "De novo review is proper [in summary judgment situations] where evidentiary objections raise questions of law, such as whether or not a statement is hearsay." (*Id.* at p. 226.)

But the weight of authority since *Reid* supports application of the abuse of discretion standard. Cases considering this question and applying the abuse of discretion standard after *Reid* have been published by the First District, Second District, Third

District, Fourth District (Division One), Fifth District, and Sixth District[2] — in other words, essentially every district of the appellate courts of the State of California (except for this division and Division Two of this district), including the two courts with contrary published authority.

Moreover, application of the abuse of discretion standard is eminently sensible in light of the practical realities of evidentiary objections in summary judgment proceedings. Defendant raised evidentiary objections to some 79 separate portions of plaintiff's declarations opposing summary judgment — typically, multiple objections to each such portion. Defendant's evidentiary objections span nearly 100 pages. This quantity is not unusual for a motion for summary judgment: "We recognize that it has become common practice for litigants to flood the trial courts with inconsequential written evidentiary objections, without focusing on those that are critical." (*Reid*, *supra*, 50 Cal.4th at p. 532.) As a result, trial courts typically rule on evidentiary objections in summary fashion, which often prevents us from determining the precise nature (i.e., principally legal or factual) of the trial court's ruling. And rulings on evidentiary objections often "involve trial courts making qualitative and sometimes equitable determinations," which are the sort of decisions we typically review for abuse of discretion. (*Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1124 (conc. opn. of Turner, P. J.).)

We therefore join the great weight of authority and conclude the abuse of discretion standard applies.

---

[2] See, e.g., *Schmidt v. Citibank, N.A.* (2018) 28 Cal.App.5th 1109, 1118 (Fourth District, Division One); *Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1169 (Third District); *Duarte v. Pacific Specialty Ins. Co.* (2017) 13 Cal.App.5th 45, 52 (First District); *O'Neal v. Stanislaus County Employees' Retirement Assn.* (2017) 8 Cal.App.5th 1184, 1198 (Fifth District); *Ryder v. Lightstorm Entertainment, Inc.* (2016) 246 Cal.App.4th 1064, 1072 (Second District); *Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 951 (Sixth District).

## 2. The "Same Actor" Inference

Defendant argues the "'same actor inference'" applies and requires plaintiff to present strong evidence of discriminatory motives to survive summary judgment. (*Nazir v. United Airlines Inc*. (2009) 178 Cal.App.4th 243, 273) """"[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive."""" (*Id*. at p. 272.) This """strong inference"""" must be considered on a summary judgment motion. (*Id.* at p. 273.) However, while "same actor evidence will often generate an inference of nondiscrimination . . . the effect should not be an a priori determination, divorced from its factual context." (*Ibid.*) It is an inference derived from the logic of the situation, not a presumption imposed by the law. (*Ibid.*)

We conclude the same actor inference either does not apply or applies with greatly reduced force under these circumstances. The rationale for the inference "is that "'[f]rom the standpoint of the putative discriminator, '[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.'"'" (*Nazir*, *supra*, 178 Cal.App.4th at p. 273.) But that rationale is much weaker when the person being hired is the owner and principal of a firm being simultaneously acquired by the employer. The employer might be motivated to acquire the business by a desire for access to customer lists and relationships, intellectual or physical property, goodwill, technical expertise, or other considerations having nothing to do with the identity of the owner of the company to be acquired. Thus, a jury might easily conclude the employer hired the principal of the company as a prerequisite for acquiring the company, even while harboring discriminatory motives against that person.

Accordingly, we see no reason, on this evidence, to depart from the usual standard applicable to summary judgment motions of this type, as described in *Light*, or to impose any increased burden on the plaintiff.

7

### 3. Replacement by Younger Males

Defendant contends plaintiff produced no substantial evidence she was replaced by younger males, and that the trial court's reliance on this factor to grant a new trial was erroneous. Plaintiff points to two sources of such evidence in response: plaintiff's own declaration, in which she claims she was demoted and replaced by a younger man, John De Los Reyes, and the declaration of John De Los Reyes, in which he states he replaced plaintiff.

Defendant argues each of these is insufficient. First, defendant points to an excerpt from plaintiff's deposition in which she admits defendant "broke [her] role up into several different people." However, this testimony is not necessarily inconsistent with her declaration or that of De Los Reyes. During her deposition, plaintiff testified that her initial role, which was broken up, was "Head Solutions, Sales, Skype for Business." In her declaration, she indicates she was replaced as "Leader of the Skype for Business team" by De Los Reyes. De Los Reyes's declaration uses the same terminology. Thus, viewed in the light most favorable to plaintiff, the evidence supports a reasonable inference that De Los Reyes replaced plaintiff in some, if not all, of her job duties by taking over management of the Skype for Business team.

Next, defendant takes issue with the particulars of the declarations themselves. Defendant argues that both plaintiff and De Los Reyes's declarations are "uncorroborated," but the declarations corroborate each other. Defendant also argues the declarations are "self-serving." Plaintiff's declaration is undeniably self-serving, but defendant offers no explanation for its characterization of De Los Reyes's declaration as "self-serving." We reject that characterization.

Defendant also argues De Los Reyes contradicts himself in his declaration. Defendant points out De Los Reyes only claims to have become "Global Practice Lead for Skype for Business" in 2018, even though plaintiff lost her position as "Head Solutions, Sales, Skype for Business" in April 2017. It is unclear whether this actually

8

reflects a factual issue around the timeline, as the text of the relevant portion of De Los Reyes's declaration reads "When Plaintiff was demoted in 2018, I took over Plaintiff's role as the Global Practice Lead for Skype for Business." This might reflect confusion by De Los Reyes over the precise sequence of events, a typographical error (replacing 2017 with 2018), or a period of several months during which plaintiff's position was vacant. But even if plaintiff's position was vacant for a period of months before De Los Reyes assumed it, as defendant appears to be suggesting, De Los Reyes is still properly characterized as "replacing" plaintiff in the position.

Lastly, defendant similarly criticizes plaintiff's declaration as lacking precision. Defendant points out plaintiff states only that De Los Reyes replaced her as "Leader of the Skype for Business team," and is silent as to any replacement carrying her official job title of "Head Solutions, Sales, Skype for Business." However, as discussed above, viewed in the light most favorable to plaintiff, the evidence supports an inference that plaintiff's job of "Head Solutions, Sales, Skype for Business" was broken up, with some of her job duties being transferred to De Los Reyes, who took over management of the Skype for Business team.

We also note that all of defendant's criticism regarding plaintiff's evidence on this point goes to the weight of the evidence, not to its admissibility. And while "'"'"uncorroborated and self-serving declarations'"'"'" of an employee-plaintiff are insufficient to create a triable issue of fact in this context, plaintiff's evidence on this point cannot be so characterized. (*Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 994.) Accordingly, we conclude plaintiff produced substantial evidence supporting an inference that she was replaced by a younger man.

### 4. *Plaintiff's Performance*

Defendant next criticizes the trial court's reference to plaintiff's evidence of good performance at work. Defendant argues plaintiff's claim in her declaration that she

9

was paid a bonus every quarter for meeting her goals was false, and the trial court's citation to only that paragraph of her declaration demonstrates there was, in fact, no evidence plaintiff performed well at the company. But our review on this point is de novo, and we are not confined to the single item of evidence cited by the trial court. Instead, we look to the evidence itself, viewed in the light most favorable to plaintiff, to determine if plaintiff created a triable issue of fact on this point.

The record is replete with evidence of plaintiff's good performance at work. Plaintiff's opposition to defendant's summary judgment motion included declarations from six different employees, all attesting to plaintiff's professionalism and model behavior.

For example, one declarant wrote: "I never heard a single complaint about Plaintiff's behavior. She always communicated effectively and supported those employees she worked with at [defendant]. I recognized Plaintiff's capacity as a great leader and knowledgeable in her industry, as I came from the same space and could recognize her talents. Her sales ability was excellent, and she was a closer. She could carry the deal from pre-sales to post-sales, she knew it all, and her reputation carried much weight with clients. Plaintiff's behavior and performance were exemplary and always professional. . . . She maintained herself at every moment. She was highly regarded as a great example of a corporate executive and elevated the professionalism at [defendant]."

Another wrote: "I never heard a single complaint about Plaintiff while working at [defendant]. Plaintiff was a talented professional and a great team leader. Her team always praised Plaintiff's hard work for [defendant] and how much they liked working for such a supportive manager. Plaintiff also had in-depth knowledge about the UC practice and [was] an excellent source for her team."

Another: "Plaintiff had excellent work ethics. She was always very professional and was a great resource and talent for [defendant]. I never heard about any

10

problems or complaints regarding her performance or leadership skills, she was a great professional, and people enjoyed working with her."

Another: "Plaintiff was a great employee at [defendant], a great coworker, and an example to follow.

Another: "Plaintiff worked all hours of the day, she traveled endlessly, and her task load was insane. Her value to the business unit was exceptional. I think she worked more than anyone I can remember. She was a consummate professional and worked to the bone. I never heard anything negative about how she treated anyone, including her team. She made time for everyone and got back to us in a timely fashion. She was extremely knowledgeable and an excellent resource. She traveled 99% of the time, and no one wanted to cover her job duties due to the travel and demands."

Still another: "I am unaware of any unacceptable behavior by Plaintiff which would have led to her termination. Plaintiff was always a professional. I never heard about any issue with her work performance or leadership. She was always responsive and did an outstanding job."

Of course, the record also contains several declarations attesting to plaintiff's poor performance at work, proffered by defendant. However, the existence of this contrary evidence only serves to create a triable issue of fact.

Defendant further contends plaintiff's completion of quarterly goals is irrelevant to a showing of discriminatory intent because defendant "did not take either employment action [the demotion or subsequent firing] because [plaintiff] failed to meet any quarterly goals." This misses the point. Defendant claims it demoted and then fired plaintiff because of her poor performance, particularly in terms of managing her team. In response, plaintiff produced evidence that she was a good manager and well-liked by her team. Plaintiff's evidence, if accepted, would tend to show defendant's stated rationale was pretextual. The trial court's consideration of this factor was proper.

11

*5. Cochran's Comments*

As described above, at an after-work event, Jason Cochran, defendant's director of technical services, stated that defendant is a "guy's club," and that plaintiff was "never going to make it" at the company, and called her a "bitch." The trial court, in granting the motion for a new trial, relied in part on these statements, and overruled defendant's objections thereto. Defendant argues that the statements by Cochran are inadmissible hearsay, and therefore do not support an inference of discriminatory motives. We agree that one of the three statements was inadmissible hearsay and should have been excluded but conclude the trial court did not abuse its discretion in admitting the other two statements into evidence, and properly relied upon them as support for a potential inference of discriminatory motives.

"'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) In other words, "a hearsay statement is one in which a person makes a factual assertion out of court and the proponent seeks to rely on the statement to prove that assertion is true" (*People v. Sanchez* (2016) 63 Cal.4th 670, 665, 674.)

We begin by considering whether each of the three statements is hearsay. The first statement, that defendant is a "guy's club," is indisputably hearsay. Plaintiff is offering the statement to show that defendant's workplace is hostile to her because she is a woman. The second statement, that plaintiff was "never going to make it," is also hearsay, as it is being offered to show defendant was discriminating against plaintiff. However, the third statement, wherein Cochran called plaintiff a "bitch," is not hearsay. It is not being offered to prove the truth of the matter stated but is instead offered as evidence of animus against plaintiff. The third statement, not being hearsay, was properly admitted.

12

Next, we consider whether the two hearsay statements fell within a hearsay exception. The only likely candidate is the authorized admissions exception, Evidence Code section 1222. "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if: [¶] (a) The statement was made by a person authorized by the party to make a statement or statements for him concerning the subject matter of the statement; and [¶] (b) The evidence is offered either after admission of evidence sufficient to sustain a finding of such authority or, in the court's discretion as to the order of proof, subject to the admission of such evidence." (*Ibid*.) Defendant argues plaintiff failed to establish that Cochran was authorized to speak for defendant on these issues, pointing out that Cochran was not the decisionmaker as to plaintiff's demotion or termination.

As discussed above, we apply the abuse of discretion standard to this issue. Under that standard, "[W]e defer to the trial court's factual findings so long as they are supported by substantial evidence, and determine whether, under those facts, the court abused its discretion. If there is no evidence to support the court's findings, then an abuse of discretion has occurred." (*Tire Distributors, Inc. v. Cobrae* (2005) 132 Cal.App.4th 538, 544.)

In *Bowser v. Ford Motor Co.* (2022) 78 Cal.App.5th 587, several internal e-mails related to the plaintiff's employment were held to be inadmissible hearsay because the authors of those e-mails were not authorized to speak on the subject matter. (*Id*. at pp. 616-617.) The court explained the applicable rule: "'''''[W]hatever is said by an agent, either in the making of a contract for his principal, or at the time, and accompanying the *performance of any act, within the scope of his authority*, . . . of the particular contract or transaction in which he is engaged, is, in legal effect, said by his principal, and admissible as evidence . . . .'''''''' (*Id.* at p. 612.) It elaborated, "[W]*hen based on job title alone*, [the adoptive admission exception] applies only to high-ranking organizational agents." (*Id.* at p. 613.)

13

It is undisputed that Cochran was not responsible for managing plaintiff and was not her supervisor. Thus, there is no evidence that Cochran's job duties were related to plaintiff's and the subject matter of her job performance did not fall within the scope of his employment or authority. While his position was relatively high on the corporate ladder, there is no evidence of any relationship between his position and plaintiff's, which calls into question Cochran's authority to speak for defendant about plaintiff's job performance or prospects.

However, Cochran's high position in the corporate hierarchy and defendant's characterization of him in its motion and supporting evidence as "leadership" are substantial evidence of his authority to speak, in general terms, about defendant's company culture. Thus, as to Cochran's statement that defendant is a "guy's club," we conclude the trial court did not abuse its discretion by overruling defendant's objection and admitting that statement into evidence.

Defendant cites two cases as contrary authority: *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52 (*Morgan*), and *O'Neill v. Novartis Consumer Health, Inc.* (2007) 147 Cal.App.4th 1388 (*O'Neill*). *Morgan* involved statements specifically about the plaintiff's personnel matters by an administrator and two personnel analysts. (*Morgan*, *supra*, at pp. 70-71.) We conclude *Morgan* says little that is relevant to the admissibility of the "guy's club" statement.

In *O'Neill*, the Court of Appeal affirmed the trial court's exclusion of certain meeting minutes, signed by the defendant's director of regulatory affairs. (*O'Neill*, *supra*, 147 Cal.App.4th at pp. 1402-1403.) The court concluded the employee's title alone was insufficient to show his authority to speak on behalf of the company. (*Id.* at p. 1403.) *O'Neill* is both procedurally and factually distinguishable. Procedurally, in *O'Neill*, the Court of Appeal was reviewing the trial court's *exclusion* of evidence at trial. Thus, the deferential abuse-of-discretion standard of review applicable to evidentiary rulings cut in favor of exclusion in that case, while it cuts in favor of admission here.

14

Factually, in *O'Neill*, the *only* evidence of authority was the employee's job title. Here, defendant's papers also admit the employee was "leadership," which is a significant factor in determining authority. Moreover, *O'Neill* involved a statement addressing a very technical matter relating to the safety of certain medication manufactured by the defendant (*id*. at p. 1393), while the present case involves a much more general description of the company's culture. One would expect authority for the former type of statement to be tightly constrained to those with relevant technical expertise, while the latter type of statement would ordinarily be within the general authority of most executive leadership in a typical organization.

Lastly, defendant is only entitled to raise evidentiary issues it properly preserved for appeal by objecting. (Evid. Code, § 353.) Plaintiff submitted two separate declarations describing Cochran's comments, one in connection with her opposition to defendant's motion for summary judgment, and another in connection with her motion for new trial. Defendant submitted written objections to both declarations, but only objected to plaintiff's description of Cochran's comments in her second declaration, not in her declaration in opposition to the summary judgment motion. Thus, defendant waived its objection to Cochran's comments in the context of the summary judgment motion. Even if the trial court had sustained defendant's objection to plaintiff's second declaration, the same evidence would still have been before the court through plaintiff's first declaration.

Accordingly, we conclude the trial court properly considered and relied upon Cochran's three comments in considering the motion for new trial.

6. *The Timing of Complaints About Plaintiff*

Lastly, defendant argues the trial court's reliance on "the arguable temporal connection between [plaintiff's] demotion and her asserted complaints about discriminatory culture," to find a triable issue of fact regarding discriminatory motives

15

was erroneous. Defendant contends its evidence of legitimate, nondiscriminatory reasons for plaintiff's demotion and firing renders the timing irrelevant. Defendant quotes *Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327: "[T]emporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination." (*Id.* at p. 353.)

We take no issue with this assertion as a general statement of the law. But considering our rejection of defendant's other arguments regarding plaintiff's other evidence of discriminatory motives, we are far from a situation where plaintiff is relying on "temporal proximity alone" to create a triable issue of fact.

### 7. Light *and Aggregating the Evidence*

Under *Light*, the trial court here could not grant summary judgment, and could properly have granted plaintiff a new trial if the evidence could ""'"support[] a reasoned inference that the challenged action was the product of discriminatory or retaliatory animus."'"" (*Light*, *supra*, 14 Cal.App.5th at p. 94.) As discussed above, other than our conclusion that the trial court should have excluded Cochran's statement that plaintiff would "never make it" working for defendant, we reject defendant's arguments regarding the insufficiency of the individual factors relied upon by the trial court to conclude this showing had been made, and that any increased burden should have been imposed by virtue of the same actor inference.

We conclude the evidence, in the aggregate, is sufficient to support a reasoned inference that plaintiff's demotion or firing was the result of discriminatory or retaliatory animus. Viewed in the light most favorable to plaintiff, we are persuaded plaintiff's evidence that she was replaced by a younger man, had been performing well at the company, was told defendant was a "guy's club," was called a "bitch" by a member of defendant's leadership team, was demoted and then fired within a relatively short span of time after complaining about defendant's allegedly discriminatory culture is enough

16

that a jury could reasonably conclude defendant was motivated not by its stated reasons, but by discriminatory or retaliatory animus.  That conclusion compels us to affirm the court's order vacating its prior judgment and granting plaintiff a new trial.


## DISPOSITION

The order is affirmed.  Plaintiff Jane Doe shall recover her costs on appeal.



SANCHEZ, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.

Filed 11/8/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JANE DOE, | |
| Plaintiff and Respondent, | G060554 |
| v. | (Super. Ct. No. 30-2019-01045961) |
| SOFTWARE ONE, INC., | O R D E R |
| Defendant and Appellant. | |

Timothy M. Kowal Esq. from Thomas Vogele & Associates has requested that our opinion filed on October 12, 2022, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


SANCHEZ, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.